UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH GEISMAR,<br>Plaintiff,<br>v.<br>OCWEN LOAN SERVICING, LLC,<br>Defendant. | Case No.17-cv-02703-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION TO DISMISS**<br>Re: Dkt. No. 29 |

Plaintiff Elizabeth Geismar brought this action against Defendants Ocwen Mortgage Servicing, Inc. and Ocwen Loan Servicing, LLC alleging negligent and intentional violations of the Telephone Consumer Protection Act, as well as a state law negligence claim.[1] Defendant's motion to dismiss is now pending before the Court.[2] (Dkt. No. 29.) After carefully considering the arguments and briefing submitted, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and GRANTS the motion to dismiss Plaintiff's negligence and punitive damages claims.

## BACKGROUND

**A. Complaint Allegations**

Plaintiff incurred mortgage related financial obligations to Ocwen Loan Servicing, LLC ("Ocwen"). (First Amended Complaint (Dkt. No. 21) at ¶ 18.) Over a nearly two-year period, from March 13, 2014 through December 16, 2015, Ocwen used an automatic telephone dialing

---

[1] Plaintiff then voluntarily dismissed her claims against Defendant Ocwen Mortgage Servicing, Inc. (Dkt. No. 22.)
[2] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 8 & 14.)

system ("ATDS") to call Plaintiff's cellular telephone as part of a debt collection effort. (*Id*. ¶¶ 19, 29.) During this time period Ocwen called Plaintiff at least 1,086 times. (*Id*. ¶ 23.) Often, when Plaintiff would answer the calls, there would be silence, sometimes with a click or a beep-tone, and then an Ocwen representative would pick up and begin speaking; other times, the call consisted of a prerecorded voice or message. (*Id*. ¶¶ 21, 22.)

Ocwen or its agents made all of these calls, with "Defendant['s] permission, knowledge, control, and or Defendant['s] benefit." (*Id*. ¶ 31.) Plaintiff never gave Ocwen consent to make these calls. (*Id*. ¶ 25.) In fact, on numerous occasions, Plaintiff orally told Ocwen's representative to stop calling and expressed that she no longer wished to be contacted via phone, but the calls continued. (*Id*. ¶¶ 26-28, 30.) Plaintiff asserts that because of the calls, she suffered "an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the [Telephone Consumer Protection Act]." (*Id*. ¶ 33.) Plaintiff was also "personally affected, becoming frustrated and distressed" and the calls affected her daily activities, her personal and professional life, and her ability to use a phone. (*Id*. ¶¶ 34-36.)

### B. Procedural Background

Plaintiff filed this action on May 10, 2017, alleging negligent and willful violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, as well as a state law negligence claims. (Dkt. No. 1.) Defendants then filed a motion to dismiss and a motion to stay. (Dkt. Nos. 16 & 17.) While those motions were pending, Plaintiff filed her First Amended Complaint and voluntarily dismissed Ocwen Mortgage Servicing, Inc. (Dkt. Nos. 19, 21.) Defendant Ocwen thereafter again moved to dismiss and the parties requested that the motion to stay be re-calendered to be heard with the newly filed motion to dismiss. (Dkt. Nos. 26, 29.) At the hearing, the Court stayed the action, but ordered limited to discovery to proceed anticipating that the DC Circuit Court of Appeals would soon issue a decision in *ACA International v. Federal Commc'ns Comm'n*, No. 15-1211 (D.C. Cir. 2015). However, that case has now been argued and submitted for more than a year. Accordingly, at a December 7, 2017 Case Management Conference, the Court lifted the stay and set a case management schedule. This order follows on the still pending motion to dismiss.

**DISCUSSION**

As a threshold matter, Defendant insists that Plaintiff lacks Article III standing to bring any claims because she has not suffered an "injury-in-fact." Defendant also maintains that Plaintiff's state law negligence claim is barred by the statute of limitations, or alternatively, that Plaintiff cannot state a claim for negligence because it owes her no duty of care. Finally, Defendant moves to dismiss Plaintiff's claim for punitive damages.

**A. Plaintiff has Standing**

"Standing is a necessary element of federal-court jurisdiction" and a "threshold question in every federal case." *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Article III standing consists of three "irreducible constitutional minimum" requirements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016). The injury in fact "must be both concrete and particularized." *Id*. at 1548. To be "particularized," an injury "must affect the plaintiff in a personal and individual way," while "concreteness" requires an injury to be " 'de facto'; that is, it must actually exist." *Id*. at 1548 (citation omitted). Although Article III standing requires a concrete injury even in the context of a statutory violation, a "violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury-in-fact ... [and] a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id*. at 1549.

Congress enacted the TCPA in response to an increasing number of consumer complaints arising from the increased number of unsolicited calls which were a "nuisance and an invasion of privacy." *Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 954 (9th Cir. 2009). Thus, the TCPA was intended to provide a private right of action to individuals seeking to enjoin or recover damages for violations of the statute. *See* 47 U.S.C. § 227(b)(3). "The vast majority of courts that have addressed [the] question [of standing under the TCPA] have concluded that the invasion of privacy, annoyance and wasted time associated with robocalls is sufficient to demonstrate concrete injury." *See Abante Rooter & Plumbing, Inc. v. Pivotal Payments, Inc*., No. 16-CV-05486-JCS,

3

2017 WL 733123, at *7 (N.D. Cal. Feb. 24, 2017) (collecting cases re: same).

Here, Plaintiff contends that her "personal privacy and peace [] was invaded by Defendant's persistent phone calls using an ATDS" and that she received over a thousand such calls within a two year period. (FAC at ¶¶ 23, 41.) These allegations sufficiently allege a concrete injury-in-fact. Accordingly, the Court concludes that Plaintiff has standing to bring her claims.

**B. Plaintiff's Negligence Claim**

Defendant's motion to dismiss Plaintiff's negligence claim is two-fold. First, Defendant insists that Plaintiff's claim is barred by the statute of limitations. Second, Defendant argues that even if it is not so barred, the claim fails because it does not owe Plaintiff a duty of care.

### 1) The Statute of Limitations

The statute of limitations on Plaintiff's state law negligence claim is two years. Cal. Civ. Code § 335.1; *see also Ward v. Westinghouse Canada, Inc.*, 32 F.3d 1405, 1407 (9th Cir. 1994). Plaintiff's allegations span March 13, 2014 through December 16, 2015. (FAC at ¶ 19.) This action was filed May 10, 2017. Thus, only the allegations between May 10 2015 and December 16, 2015 are within the statute of limitations. Defendant insists that allegations regarding calls prior this date are barred by the statute of limitations. Plaintiff counters that even if so, such claims are tolled under either *American Pipe* or the doctrine of equitable tolling. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) ("*American Pipe*").

#### a) Tolling under *American Pipe*

First, Plaintiff contends that the statute of limitations on her negligence claim is tolled because of a class action that was filed in the Northern District of Illinois on October 27, 2014, *Snyder v. Ocwen Loan Servicing, LLC*, No. 1:14-cv-8461, which involves similar claims.

Under federal law, "'the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.' ... Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits[.]" *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983) (quoting *American Pipe*, 414 U.S. at 554). However, *American Pipe* "does not

mandate cross-jurisdictional tolling as a matter of state procedure[,]" and California does not recognize the doctrine because of its "interest in managing its own judicial system." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008); *see also Hatfield v. Halifax PLC*, 564 F.3d 1177, 1187 (9th Cir. 2009) (acknowledging that *Clemens* would foreclose the possibility of the application of *American Pipe* because California law does not recognize cross-jurisdictional tolling).

Thus, while the *Synder* class action may toll Plaintiff's TCPA claims, it does not toll her state law negligence claim. *See Brandt v. Ocwen Loan Servicing*, LLC, No. 17-00643DAD EPG, 2017 WL 5878581, at *7 (E.D. Cal. Nov. 29, 2017) ("tolling based upon the filing of the *Snyder* class action would only apply to the bringing of plaintiffs' TCPA claim" and not any state law claims); *Montegna v. Ocwen Loan Servicing, LLC*, No. 17-CV-00939-AJB-BLM, 2017 WL 4680168, at *7 (S.D. Cal. Oct. 18, 2017) ("while *American Pipe* would admittedly toll the statute of limitations for Plaintiff's federal TCPA claims, because California does not recognize cross-jurisdictional tolling, this Court has no authority to apply *American Pipe* to Plaintiff's state law claims of negligence and violations of the Rosenthal Act.").

### b) Equitable Tolling

Next, Plaintiff argues that her state law negligence claim may nonetheless be tolled under the doctrine of equitable tolling. "California's equitable tolling doctrine [] covers situations beyond those covered by *American Pipe*." *Hatfield*, 564 F.3d at 1188. "Broadly speaking," equitable tolling "applies [w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 100 (2008) (internal quotation marks and citation omitted). Thus, it applies "where one action stands to lessen the harm that is the subject of a potential second action; where administrative remedies must be exhausted before a second action can proceed; or where a first action, embarked upon in good faith, is found to be defective for some reason." *Id*. Equitable tolling "require[s] a showing of three elements: timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." *McDonald*, 45 Cal. 4th at 102 (internal quotation marks omitted). This three prong test is used to determine "whether two claims are "similar" enough that

5

the pendency of the one should toll the limitations period for the other." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993). Similarity is required because the first action must "alert[ ] the defendant to the necessity to investigate facts which form the basis for the [second] claim." *Dees v. California State Univ., Hayward*, 33 F. Supp. 2d 1190, 1205 (N.D. Cal. 1998).

Plaintiff insists that equitable tolling based on the *Snyder* action is proper because (1) the *Snyder* class action filed in October 2014 provided Defendant with timely notice of Plaintiff's claim, (2) Defendant is not prejudiced in gathering evidence to defend these claims because the claim is substantially similar to those in the *Snyder* case, and (3) Plaintiff filed this case prior to a class determination in *Snyder* "thus acting timely and reasonably in bringing a claim forward." (Dkt. No. 34 at 6:15-20.) Defendant does not address Plaintiff's equitable tolling argument and thus has not explained how it would be prejudiced if Plaintiff's negligence claim was equitably tolled with respect to calls between March 13, 2014 and May 14, 2015. Under these circumstances, the Court cannot say as a matter of law that Plaintiff's negligence claim is not equitably tolled by the *Snyder* action and thus Defendant's motion to dismiss based on the statute of limitations is denied. *See Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (questions of equitable tolling are "'not generally amenable to resolution'" on a motion to dismiss).

**2) Defendant Does not owe Plaintiff a Duty of Care**

Defendant also moves to dismiss Plaintiff's negligence claim for failure to state a claim because it insists that it does not owe her a duty of case. Negligence claims require the following elements: (1) a legal duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; (3) causation; and (4) injury to the plaintiff resulting from the breach. *Merrill v. Navegar, Inc.*, 26 Cal.4th 465, 500 (2001). Under California law, "liability to a borrower for negligence may arise only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender." *Wagner v. Benson*, 101 Cal. App. 3d 27, 35 (1980) (quoting *Connor v. Great Western Sav. & Loan Ass'n*, 69 Cal.2d 850, 864 (1968)).

In *Connor*, for example, the California Supreme Court held that the defendant bank owed a duty of care to borrowers to whom it lent money to buy houses in a development that was riddled

6

with major structural defects. The court reasoned that the bank

> became much more than a lender content to lend money at interest on the security of real property. It became an active participant in a home construction enterprise. It had the right to exercise extensive control of the enterprise. Its financing, which made the enterprise possible, took on ramifications beyond the domain of the usual money lender. It received not only interest on its construction loans, but also substantial fees for making them, a 20 percent capital gain for "warehousing" the land, and protection from loss of profits in the event individual home buyers sought permanent financing elsewhere.

*Connor*, 69 Cal. 2d at 864. The bank therefore had a duty to its borrowers to exercise reasonable care to ensure the homes did not have major structural defects. *Id.* at 866. The circumstances alleged here, however, do not amount to actively participating in Plaintiff's loan; instead, Defendant attempted to collect on a conventional loan. No California state court cases hold that aggressively and unreasonably attempting to collect on a loan involves actively participating in the loan (the financed enterprise) beyond the domain of the usual money lender or that such unreasonable conduct otherwise gives rise to a duty to use reasonable care. Accordingly, the Court concludes that Defendant did not owe Plaintiff a duty of care in the attempted collection of her loan. *See Franklin v. Ocwen Loan Servicing*, LLC, No. 17-CV-02702-JST, 2017 WL 4922380, at *3 (N.D. Cal. Oct. 31, 2017); *see also Montegna v. Ocwen Loan Servicing, LLC*, No. 17-CV-00939-AJB-BLM, 2017 WL 4680168, at *10-11 (S.D. Cal. Oct. 18, 2017) (finding no duty of care and collecting cases re: the same).

The Court recognizes that some California federal district courts have held that an entity such as Defendant owes consumers such as Plaintiff a duty of care when making telephone calls to collect financial obligations related to a primary residence mortgage. *See, e.g., Brandt v. Ocwen Loan Servicing*, LLC, No. 17-00643DAD EPG, 2017 WL 5878581, at *10 (E.D. Cal. Nov. 29, 2017) (finding a duty of care and collecting cases re: the same). These cases, however, do not explain how the defendant's telephone collection conduct—as outrageous as it may be—involves actively participating in the financed enterprise. And they do not cite any California state court cases that held a duty arose under similar circumstances.

Defendant's motion to dismiss Plaintiff's negligence claim is therefore granted.

7

**C. Plaintiff's Punitive Damages Claim**

Since Plaintiff's sole state law claim—negligence—fails, her demand for punitive damages on that state law claim also fails.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss the negligence claim and punitive damages demand is GRANTED with 20 days leave to amend. The previously established case management schedule remains in place.

This Order disposes of Docket No. 29.

**IT IS SO ORDERED.**

Dated: January 3, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge